Case 6:20-cv-00075-RSB   Document 22   Filed 12/08/21   Page 1 of 11   Pageid#: 1505

CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/8/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| TINA G.[1], | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:20cv00075 |
| | ) |
| KILOLO KIJAKAZI[2], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Tina G. ("Tina") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Tina alleges that the Administrative Law Judge ("ALJ") failed to properly: (1) assess her mental RFC; and (2) weigh the medical opinions in the record.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 20) and **DENY** Tina's Motion for Summary Judgment (Dkt. 19).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Tina failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Tina filed for SSI benefits in November 2017, claiming that her disability began on November 13, 2017[4], due to fibromyalgia, anxiety/panic attacks, lower back arthritis, and

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] Tina originally alleged her onset date was in January 2008 but amended her onset date to November 2017 at the hearing. R. 19, 98.

migraines.[5]  R. 19, 232, 255. The state agency denied Tina's claims at the initial and reconsideration levels of administrative review. R. 140–57, 160–79. ALJ L. Raquel Baily Smith held a hearing on March 3, 2020 to consider Tina's claim for SSI, where vocational expert Robert Lester testified, and Tina was represented by counsel. R. 70–99. On March 25, 2020, the ALJ entered her decision considering Tina's claim under the familiar five-step process[6] and denying her claim for benefits. R. 19–36.

The ALJ found that Tina suffered from the severe impairments of spine disorder, fibromyalgia, migraine headaches, gastroesophageal reflux disease ("GERD"), obesity, generalized anxiety disorder, panic disorder, somatic symptom disorder, depression, dysthymia, and borderline intellectual functioning.[7] R. 22. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 23. Specifically, the ALJ considered listing 1.04 (disorders of the spine), listing 14.00 (immune system disorders), listing 11.02 (epilepsy), listing 12.04 (depressive, bipolar, and related disorders), listing 12.05 (intellectual disorder), listing 12.06 (anxiety and obsessive and compulsive disorders), and listing 12.11 (neurodevelopmental disorders). R. 23–24. The ALJ also considered Tina's obesity in relation to the other listings. R. 24. The ALJ found that,

---

[5] Tina was 31 years old on the date her application was filed, and 33 years old on the date of the ALJ's decision, making her a younger person under the Act. R. 160.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[7] The ALJ also noted that Tina's knee disorder and history of GERD were non-severe impairments, and that her history of sensorineural hearing loss was not a medically determinable impairment. R. 22–23.

regarding her mental impairments, Tina had moderate limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing oneself. R. 24–25.

The ALJ concluded that Tina retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 27. Specifically, Tina can only occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, tolerate exposure to fumes, odors, dust, gases, poor ventilation, hazards, and exposure to vibration. Id. She can never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights. Tina can work in an environment with a moderate noise intensity level or quieter such as defined by Selected Characteristics of Occupations. Tina can understand, remember, and carry out simple, repetitive tasks consistent with unskilled, repetitive work, and can concentrate, persist, and maintain pace to complete unskilled, repetitive tasks that do not require production-rate pace (meaning fast paced work). She can have occasional contact with coworkers and supervisors but no contact with the public, can perform work in settings where tasks involve work primarily with objects rather than people, and can adapt to occasional changes associated with unskilled repetitive work. The ALJ determined that Tina was unable to perform her past relevant work as a babysitter, but that she could perform jobs that exist in significant numbers in the national economy, such as router, classifier, and non-postal mail clerk. R. 35. Thus, the ALJ concluded that Tina was not disabled. R. 35. Tina appealed and the Appeals Council denied her request for review on October 1, 2020. R. 1–3

## **ANALYSIS**

Tina alleges that the ALJ failed to properly: (1) assess her mental RFC; and (2) weigh the medical opinions in the record.

A. **Medical History Overview**

Regarding her mental health[8], Tina has been diagnosed with anxiety disorder, bipolar disorder, panic disorder, depression, and borderline intellectual functioning. R. 1011, 1019. She has a limited education, completing the ninth grade in special education classes. R. 34, 1148. While her primary care doctor prescribed medication for her mental health impairments, she has never had an inpatient hospitalization and did not receive counseling or therapy during the relevant period. R. 31.

1. Medical Opinion Evidence

In April 2018 and June 2019, respectively, state agency psychologists Leslie E. Montgomery, Ph.D. and Linda Dougherty, Ph.D, reviewed the record and found Tina had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and no limitations in adapting or managing oneself. R. 149, 169. The ALJ found these opinions not persuasive. R. 32.

In April 2018, Marvin Gardner, Ph.D., performed a psychological consultative examination. R. 1146–51. Tina reported symptoms of depression and anxiety, including having panic attacks one to two times a week. R. 1149–50. Dr. Gardner concluded that Tina would be "able to complete a normal work day or work week without interruptions resulting from her psychiatric condition during the first week or two on a new job. However, she then is likely to become depressed [and begin] to display rather marked anxiety . . . [a]t [which] point her depression becomes severe and . . . by then she has been fired from her job." R. 1151. Dr. Gardner wrote that while Tina is able to accept instructions from supervisors and interact with a

---

[8] Tina's arguments related to the ALJ's alleged errors involve her mental impairments and RFC, not physical. Accordingly, I will focus on the record related to Tina's mental health history, treatment, and opinions.

small number of familiar co-workers, she is not able to deal with the usual stresses encountered in competitive work. Id. The ALJ found Dr. Gardner's opinion not persuasive. R. 32.

In May 2019, Tina attended another consultative examination, this time with Jeannie Berger, Ph.D. R. 1287–92. Dr. Berger diagnosed generalized anxiety disorder, panic disorder with agoraphobia, somatic symptom disorder, predominantly pain, dysthymia, and borderline intellectual functioning, by history. R. 1291. Dr. Berger indicated that Tina's "ability to complete a normal workday or workweek without interruption from psychological condition is significantly impaired based upon her level of anxiety and panic." R. 1292. Likewise, her ability to handle work-related stressors is significantly impaired, as based on a "long history of unsuccessful work attempts" as well as cognitive challenges and an inability to advocate for appropriate care in the healthcare system. Id. The ALJ found Dr. Berger's opinion not persuasive. R. 33.

### B. Medical Opinion Evidence

Tina argues that the ALJ erred by disregarding the opinions of Drs. Gardner and Berger, writing that, "all the psychological opinions describe consistently an individual who struggles to concentrate, interact with others, and complete a normal workday or workweek." Pl.'s Br. at 7, Dkt. 19. Tina analogizes Dr. Gardner's opinion that Tina could initially function in the workplace with limitations but would "decompensate in a matter of a few weeks," to a baseball infielder who could move around the field but could not catch or throw a baseball. Pl.'s Br. at 8, Dkt. 19. The Commissioner counters that the ALJ followed the regulations in finding the medical opinions not persuasive, emphasizing that under the new regulations the ALJ was not required to defer to any particular medical opinion when formulating Tina's RFC. The Commissioner also points out that, contrary to Tina's broad brush description that "all the psychological opinions

6

describe consistently an individual who struggles to concentrate, interact with others, and complete a normal workday or workweek", both the state agency psychologists found that Tina was capable of working. In fact, the ALJ discounted the state agency psychologists because she found Tina actually had more significant limitations than those found by the state agency psychologists. D's Br. at 12. For example, the state agency psychologist found that Tina's ability to respond appropriately to changes in the work setting was not significantly limited, but the ALJ imposed an RFC limitation of adapting to only occasional changes. R. 27, 176. Likewise, the state agency psychologists found no limitations in Tina's ability to adapt and manage herself, while ALJ found mild limitations. R. 25.

Tina filed her application in November 2017; thus, 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions here.[9] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical finding are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision.[10] Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from

---

[9] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

7

other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[11]

Here, the ALJ referenced the appropriate regulations in her analysis and considered the supportability and consistency of Dr. Gardner's and Dr. Berger's opinions. The ALJ found both opinions were not entirely supported by the doctor's own objective examination findings or the rest of the evidence. R. 32, 33. In support, the ALJ noted that the evidence generally showed mild to moderate mental findings, with "more moderate difficulties" during the consultative examinations. R. 32. Indeed, Dr. Gardner based his determination of Tina's prognosis primarily on her reports to him of her health and work history, writing Tina's "prognosis is guarded as she reports a history of adherence to various psychiatric medications, which have not been of any help in breaking the cycle reported above" and specifically noting that "all the information in [his] report was provided by [Tina], unless otherwise noted." R. 1147, 1151. Likewise, the ALJ emphasized that Dr. Gardner "only wrote that [Tina] would need a representative payee" because Tina herself indicated she would need help managing the funds, and stated her father currently manages her funds. R. 32. In contrast, Dr. Berger did find Tina could manage her own funds, after Tina stated she and her partner "pay bills together" with Tina writing out the bills that need

---

[11] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

to be paid and her partner paying those bills.[12] R. 1288, 1291. The ALJ also noted that Dr. Gardner' and Dr. Berger's opinions were not consistent with the rest of the objective evidence in the record, including generally unremarkable mental status examinations, with only a few instances of anxious mood, no history of inpatient psychiatric treatment, and no current outpatient treatment other than medication prescribed by her family doctor. R. 32–33.

### C. RFC Assessment

Tina argues that the ALJ underestimated her limitations resulting from her anxiety, depression, and related mental health disorder and thus failed to properly assess her RFC, which is not supported by substantial evidence. Tina links her medical opinion and RFC arguments, emphasizing that, "Notwithstanding the findings of the state psychologists, and both Dr. Gardner and Dr. Berger . . . the ALJ adopted functional limitations unsupported by the record . . ."[13] Pl.'s Br. at 6, Dkt. 19. The Commissioner counters that Tina's arguments are "fundamentally flawed" because under the new regulations the "ALJ was not required to defer to any medical opinion when evaluating her claim." D.'s Br. at 14, Dkt. 21. The Commissioner also writes that the regulations now contain a "'reasonable articulation standard' that 'does not require written analysis about how [the adjudicator] considered each piece of evidence.'" Id. at 14–15, citing 82 Fed. Reg. 5844-01, at 5858. The Commissioner emphasizes that Tina has failed to show she had

---

[12] Tina reported to Dr. Gardner in April 2018 that she lived with her mother and two children (R. 1147), however, shortly after, in approximately May 2018, she moved in with her fiancé, who she had been with for 17 years, and their two children. She described this relationship as "very supportive." R. 1289. At the time of the hearing, in March 2020, she lived with her fiancé and their three children, including a newborn child born in January 2020. R. 74.

[13] In her statement of issues, Tina lists various RFC assessments she asserts the ALJ either should or should not have included. For example, Tina indicates the ALJ should not have found that Tina can adapt to occasional changes associated with unskilled repetitive work, but the ALJ failed to include that Tina would miss two days of work per month. To the extent Tina asserts the ALJ provided an incomplete or incorrect hypothetical question to the vocational expert however, she points to no specific evidence in support, beyond the doctors' opinions already discussed. I find that the ALJ submitted appropriate hypothetical questions to the vocational expert and appropriately relied on the vocational expert's testimony.

greater limitations than accommodated by the RFC, and that the RFC is supported by her limited and conservative mental health treatment.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

The ALJ wrote that Tina's history of mental impairments supports the non-exertional limitations specified in the RFC. Specifically, the treatment record shows that objective mental findings have been mild to moderate, with typically normal mood and affect and cooperative attitude, with the more moderate difficulties demonstrated during the two consultative exams. R. 32. For example, at her primary care visits, she was generally alert and oriented, with normal affect. Even when Tina presented to her primary care doctor in May 2018 with specific anxiety complaints, she was noted to be in only mild distress, and "doing well on medications." R. 1377. She likewise reported her anxiety medication to be helping her in August 2018. R. 1360–62. In

April 2019, she reported no "overt panic attacks." R. 1392. The ALJ explained the mental RFC, writing:

> [B]ecause of [Tina's] generalized anxiety disorder, panic disorder, somatic symptom disorder, depression, dysthymia, and borderline intellectual functioning, she is limited to work involving only simple, repetitive tasks that do not require production rate pace, and that require no contact with the public or more than occasional contact with coworkers and supervisors. Additionally, because of her mental impairments combined she can only perform work that involves tasks primarily with objects rather than people, and only occasional work changes.

R. 34.

The primary "contradictory evidence" Tina points to in challenging the RFC are the opinions of Dr. Gardner and Dr. Berger. However, as explained, the ALJ was not required to defer to these opinions; instead, as was required, the ALJ adequately addressed the supportability and consistency of all the medical opinions. At bottom, the ALJ adequately explained how the evidence supports her conclusions regarding the RFC, including a discussion of Tina's medical history, the medical opinions, and her own allegations. I find that substantial evidence supports the ALJ's conclusions regarding Tina's RFC.

## CONCLUSION

For these reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered:  December 8, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge